

## NUMBER 13-08-00365-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

SEBASTIAN WILLIE MEJIA, Appellant,

v.

THE STATE OF TEXAS, Appellee.

### On appeal from the 377th District Court of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

A jury found appellant, Sebastian Willie Mejia, guilty of unlawful possession of cocaine weighing four grams or more but less than 200 grams with the intent to deliver, a first-degree felony.  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (d) (Vernon Supp. 2009).  After making an affirmative finding that Mejia used a firearm during the commission of the offense, the jury assessed punishment at life imprisonment and a fine of $10,000.  By four issues, Mejia contends that the evidence is legally and

factually insufficient to establish that he (1) knowingly possessed the cocaine, (2) had the intent to deliver cocaine, and (3) used a firearm in the commission of the offense; and that the sentence imposed is cruel, unusual, and disproportionate. We affirm.

## I. BACKGROUND

Mejia was indicted for knowingly possessing cocaine in the amount of four grams or more but less than 200 grams with the intent to deliver. *See id.* § 481.112(a), (d). Mejia pleaded not guilty and a jury trial commenced on March 5, 2008.

### A. The State's Evidence

At trial, the State called several witnesses, including City of Victoria police officers Brandon Torres and Michael Smith, as well as Victoria County Sheriff's Department officers David Castillo, Dale Kolar, and Kellye Stillwell.

Officer Smith testified that on February 6, 2007, he and his partner, Officer Torres, initiated a stop after they observed a 1999 blue Grand Am with excessive window tint traveling on U.S. Highway 59. The officers exited their patrol car and approached the vehicle; Officer Smith approached the driver's side and Officer Torres approached the passenger side. Officer Smith testified that as he approached, he was unable to determine the number of occupants in the vehicle due to the tint on its back windows. When the officers were about an "arm[']s length" away from the back of the vehicle, Officer Smith directed the driver, later identified as Mejia, to lower the windows. As the windows lowered, a strong scent of marihuana emanated from the vehicle. The officers had Mejia and the other occupants—front seat passenger and owner of the vehicle, Jesus Perez, and backseat passenger, Shandolyn Vasquez—exit the vehicle. No weapons were found on the person of any of the occupants. However, a small digital scale, whose surface later tested positive for cocaine, and small unused "plastic baggies," measuring approximately

2

one inch by one inch, were found in Mejia's right front pocket. Officer Smith testified that he knew of no legitimate use for the small "plastic baggies." Officer Smith verified that the tint was excessive and monitored the occupants while Officer Torres conducted a search of the vehicle.[1]

Officer Torres testified that he began his search on the passenger side of the backseat and continued around the vehicle in a counterclockwise direction. Officer Torres located two semi-automatic handguns underneath two jackets on the backseat floorboard on the passenger side of the vehicle.[2] Officer Torres testified that the guns, a 9 millimeter and a .25 caliber Titan, were loaded and that each of the guns "had a loaded round in the barrel" and would have fired if someone pulled the trigger. Next to the firearms, Officer Torres found a "clear baggie" that contained ten rounds of .25 caliber ammunition, the caliber for one of the firearms. Officer Torres then found a "clear baggie" that contained a substance, later identified as cocaine, inside and near the top of a zipped-up black makeup bag on the backseat behind the driver. Later testimony revealed that the clear baggie contained either 4.18 or 4.19 grams of cocaine, which Officer Torres testified was more than "a single dosage unit."

A women's wallet that contained a small bag of marihuana and $162.36 was found near the makeup bag. Officer Torres stated that the guns, the black makeup bag that contained the cocaine, and the wallet were "within arm's reach" of all the vehicle's occupants. Officer Torres further testified that he also located two pieces of compacted marihuana in the center console cup holder in the front seat as well as a plastic bottle of

---

[1] On appeal, Mejia does not challenge the lawfulness of the search of either the vehicle or his person.

[2] At trial, it was disputed whether one or two jackets were found on the floorboard.

Mannitol, a dietary supplement, that is often"cut up" and mixed with cocaine before sale.[3] Officer Torres testified that none of the occupants claimed ownership of either the firearms or the drugs while at the scene.

Officer Torres and Officer Smith testified about the presence of Mannitol, as well as the small "plastic baggies" and scale found on Mejia's person. Officer Torres testified that the small "plastic baggies" located in Mejia's pocket could be used to package $20 or $40 amounts of cocaine for individual sale. He also testified that an intent to deliver could be inferred from the small "plastic baggies" and scale found on Mejia's person, as well as the presence of Mannitol in the vehicle. Officer Smith testified that digital scales and Mannitol are typically used in the sale and distribution of controlled substances.

On cross-examination, Officer Torres admitted that possession of Mannitol is legal and that the lid of the Mannitol bottle did not test positive for cocaine. Further, he stated that Mejia did not attempt to flee or provide a false name to the officers. Officer Torres also stated that the firearms were concealed by at least one jacket and were not clearly visible from the driver's seat of the vehicle; however, the makeup bag that contained the cocaine was within the driver's clear view.

After the arresting officers testified, Officers Castillo, Kolar, and Stillwell testified regarding Mejia's conduct at his booking in the Victoria County Jail. Officer Castillo testified that he was present at the booking of Mejia, Perez, and Vasquez and that he heard Mejia shout to Vasquez, "Take everything. Say everything is yours," and "I'll take care of you." Officer Kolar, another officer present at the booking, testified that Mejia shouted to Vasquez and instructed her "to take the rap" because he and Perez were prior

_____

[3] Officer Smith later testified that Mannitol is used to "thin [cocaine] out" because Mannitol and cocaine are approximately the same weight.

4

felons and she had no criminal record. Officer Stillwell testified that she heard Mejia shout several times to Vasquez to "take the rap" because "she [Vasquez] would receive probation."

## B. The Defense's Evidence

The defense called Vasquez and Perez, the two passengers of the car, to testify on Mejia's behalf. Vasquez testified that on February 5, 2007, she, Perez, and Mejia traveled to Corpus Christi, Texas, to drop off Perez's daughter. Later that evening, the trio went to Aloha's, a Corpus Christi "strip club." Vasquez testified that neither she nor Mejia were cocaine users; however, she testified that she purchased cocaine in the women's restroom at Aloha's and placed it into her black makeup bag.

According to Vasquez, the trio left Corpus Christi on February 6, 2007, and were stopped by police as they drove back to Victoria. Vasquez testified that before the vehicle was stopped, she was asleep in the backseat with her head rested upon a "CD case" that contained the two guns that were later found by Officer Torres. Vasquez testified that she had recently purchased the guns after receiving threatening phone calls because she was concerned for her safety, as well as the safety of her children. Vasquez stated that the guns were not displayed or removed from the "CD case" at anytime and that she did not show or tell Mejia about the guns and cocaine.

Vasquez testified that she had pleaded guilty to the offense of delivery and possession of a controlled substance that arose from the events in question. Vasquez also testified that no one forced her to take the plea and that the fact that she had dated Mejia had no effect on her entering the plea. When asked why she pleaded guilty, Vasquez stated, "[B]ecause it was mine."

On cross-examination, Vasquez admitted that in 2001, she was convicted for making a false report to a peace officer. Vasquez did not recall whether Mejia had requested that she "take the rap" for the cocaine and firearms. Vasquez testified that she had only had the firearms "a couple of days." She testified that she purchased the .25 caliber Titan from an individual while she was in Corpus Christi, but she could not recall where she purchased the 9 millimeter or how much she had paid for either gun.[4] In addition, Vasquez testified that she did not know how may bullets a magazine from a .9 millimeter or .25 caliber Titan holds, did not know how to load the guns, and did not know where the safety switch on either of the guns was located.

On re-direct examination, Vasquez testified that she had not been romantically involved with Mejia since July 2007. She also stated that, before buying the 9 millimeter and .25 caliber Titan, she had neither owned a gun nor had any training or experience with guns.

Perez testified that Mejia was driving Perez's blue Grand Am when he was pulled over by police on the day in question. Perez testified that he was unaware that Vasquez had purchased cocaine at Aloha's the night before. He also testified that he was the owner of the digital scale found in Mejia's pocket, as well as the marihuana found in the front seat cup holder. Perez testified that he knew nothing about "cutting cocaine" and that he was unaware that cocaine was in the vehicle until he "saw the officer pull it out and . . . weigh it on the spot." Perez testified that the officers weighed the cocaine on the digital scale that they had confiscated from Mejia. Perez stated that at the time of the stop, Vasquez informed the officers that the guns and drugs were hers. On cross-examination, Perez

---

[4] Vasquez testified that she was unable to purchase a gun from Academy, a sporting goods store, because her "ID was expired."

testified that he had not previously stated that the officers weighed the cocaine on the digital scale found in Mejia's pocket because no one had ever asked him.

After hearing and considering the evidence, the jury convicted Mejia of unlawful possession of cocaine weighing four grams or more but less than 200 grams with the intent to deliver. *See id.*

## II. SUFFICIENCY

In his first three issues, Mejia challenges the legal and factual sufficiency of the evidence supporting his conviction and the jury's finding that he used a firearm in the commission of the offense.

### A. Standards of Review

In reviewing the legal sufficiency of evidence, an appellate court must review all the evidence in the light most favorable to the verdict, and ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-19; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We resolve any inconsistences in the evidence in favor of the judgment.

7

*Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In conducting a factual sufficiency review, a court of appeals reviews the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or whether it is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Unless the record clearly reveals that a different result is appropriate, we must defer to the fact finder's determination concerning what weight to be given to contradictory testimony. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

## B. Possession

In his first issue, Mejia contends that the evidence is legally and factually insufficient to establish that he knowingly possessed the cocaine found inside the vehicle.

### 1. Applicable Law

To prove possession, the State must show that the accused (1) exercised actual care, custody, control, or management of the controlled substance and (2) was conscious of his connection with it and knew what it was. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Robinson v. State*, 174 S.W.3d 320, 324 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd). When an accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of the contraband. *Robinson*, 174 S.W.3d at 325 (citing *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981); *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd)).

8

Several factors to help establish this "affirmative link" between the accused and the contraband include, but are not limited to, the following: (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the accused was the owner of the premises or had the right to possess the place where the contraband was found or was the owner or driver of the automobile in which the contraband was found; (3) whether the accused was found with a large amount of cash; (4) whether the contraband was conveniently accessible to the accused or found on the same side of the vehicle as the accused was sitting; (5) whether the contraband was found in close proximity to the accused; (6) whether a strong residual odor of the contraband was present; (7) whether the accused possessed other contraband when arrested; (8) whether paraphernalia to use the contraband was in view or found on the accused; (9) whether the physical condition of the accused indicated recent consumption of the contraband in question; (10) whether conduct by the accused indicated a consciousness of guilt; (11) whether the accused attempted to escape or flee; (12) whether the accused made furtive gestures; (13) whether the accused had a special connection to the contraband; (14) whether the occupants of the premises gave conflicting statements about relevant matters; (15) whether the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) whether the accused was observed in a suspicious area under suspicious circumstances. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Lopez v. State*, 267 S.W.3d 85, 92 (Tex. App.–Corpus Christi 2008, no pet.). No established or set formula of factors dictates a finding of a link to support a reasonable inference of knowing possession of contraband. *Lopez*, 267 S.W.3d at 92. Moreover, the number of factors present is not as important as the "logical force" they create to prove that

9

the offense was committed. *Roberson*, 80 S.W.3d at 735. Ultimately, we determine whether the evidence is sufficient to link the accused to the contraband on a case-by-case basis. *Lopez*, 267 S.W.3d at 92.

### 2.    Legal Sufficiency

Mejia argues that the evidence is legally insufficient to prove that he knowingly possessed the cocaine found in the vehicle because the State failed to affirmatively link him to the contraband. We disagree.

"Convenient access to the contraband is an accepted factor that may affirmatively link an accused to contraband found in a vehicle." *Robinson*, 174 S.W.3d at 326 (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd)). Contraband is conveniently accessible to an accused when it is "within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it." *Id.* (citing *Rhyne*, 620 S.W.2d at 601; *Deshong*, 625 S.W.2d at 329).

Mejia was driving the Grand Am when it was stopped by Officer Torres and Officer Smith. Officer Torres testified that he discovered the cocaine at the top of a zipped-up black makeup bag in the backseat. According to Officer Torres, the vehicle driven by Mejia was a "small vehicle," and the black makeup bag could be seen from the driver's seat and was "within arm's reach" of Mejia. Officer Smith testified that it would have taken only "seconds" for Mejia to transfer the contraband to another person inside the vehicle. Similarly, Officer Torres testified that there was ample time to move or secret the contraband within the vehicle between the time the officers sounded the emergency signals

10

and when they approached the vehicle.

This evidence offers strong support for the conclusion that the cocaine was within the vicinity of and easily accessible to Mejia. *See id.* at 327 (concluding that cocaine located in the back wall of a truck, which could be seen and accessed only by folding down the truck's backseat, was "conveniently accessible" to the front seat passenger); *Powell v. State*, 112 S.W.3d 642, 645-46 (Tex. App.–Houston [1st Dist.] 2003, pet ref'd) (noting that being the driver of a vehicle in which contraband is found is an affirmative link to the contraband). Furthermore, a digital scale and small "baggies" were found in Mejia's pocket and traces of cocaine were found on the digital scale. This paraphernalia also serves as an affirmative link that Mejia had care, custody, control, or management over the cocaine.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Mejia exercised actual care, custody, control, or management of the cocaine, and that he was conscious of his connection with it and knew what it was. *See Robinson*, 174 S.W.3d at 326-30.

### 3. Factual Sufficiency

Mejia argues that the evidence is factually insufficient to prove that he knowingly possessed the cocaine found in the black makeup bag because: (1) Perez testified that he was the owner of the scale; (2) Vasquez "identified [the cocaine] as hers"; and (3) "the State failed to produce anything other than a presumptive test at the scene" to show that traces of cocaine were found on the digital scale. Again, we disagree.

The jury is the sole judge of the credibility of the witnesses and may believe or disbelieve any part of a witness's testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Lee v. State*, 259 S.W.3d 785, 792-93 (Tex. App.–Houston [1st Dist.] 2007,

11

pet. ref'd). The jury was free to discredit Perez's testimony that he owned the scale as well as Vasquez's testimony that she was the owner of the cocaine. Moreover, although Mejia argues that "the State failed to produce anything other than a presumptive test at the scene to show what was contained on the scale" and that "such presumptive testing is not reliable enough to prove that the residue on the scale was cocaine," Mejia did not object when Officer Smith testified regarding the testing performed. Having failed to raise this challenge in the trial court, Mejia has waived it on appeal. *See* TEX. R. APP. P. 33.1.

Viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or that it is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Having concluded that the evidence was legally and factually sufficient to establish that Mejia knowingly possessed the cocaine, we overrule Mejia's first issue.

## C. Intent to Deliver

In his second issue, Mejia contends that the evidence is legally and factually insufficient to establish that he intended to deliver the cocaine.

### 1. Applicable Law

In order to prove that the accused intended to deliver contraband, the State must prove that the accused intended "to transfer, actually or constructively, to another a controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp. 2009). Such intent can be proved by circumstantial evidence, including evidence regarding an accused's possession of the contraband. *Robinson*, 174 S.W.3d at 331 (citing *Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.–Dallas 2004, no pet.)). Courts also consider the following factors: (1) the nature of the location at which the accused was

arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either sale or use); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Id.* Moreover, "'[i]ntent can be inferred from the acts, words, and conduct of the accused.'" *Id.* (quoting *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)).

### 2. Analysis

Here, Mejia was in possession of 4.18 or 4.19 grams of cocaine, a digital scale, small "plastic baggies," a plastic bottle of Mannitol, two loaded semi-automatic handguns, and a bag that contained additional ammunition. Officer Torres testified that: (1) 4.18 grams of cocaine was more than a single dosage unit of cocaine; (2) he was unaware of any legitimate use for the small "plastic baggies"; (3) small "plastic baggies" could be used to package $20 or $40 amounts of cocaine for individual sale; (4) Mannitol is a dietary supplement that is often "cut up" and mixed with cocaine before sale; and (5) an intent to deliver could be inferred from the small "plastic baggies" and scale found on Mejia's person, as well as the presence of Mannitol in the vehicle. Additionally, Officer Smith testified that digital scales and Mannitol are typically used in the control and distribution of controlled substances. Moreover, the jury also heard testimony from three officers at the Victoria County Jail that Mejia shouted instructions to Vasquez to "take the rap" because she had no prior felony offenses. Viewing all this evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that Mejia intended to deliver the cocaine. *See id.*; *see also Laster* 275 S.W.3d at 517.

Moreover, the only evidence that could undermine the verdict that Mejia possessed the cocaine with the intent to deliver is the testimony of Perez and Vasquez. However, the

13

jury was free to discredit this evidence.  *See Johnson*, 23 S.W.3d at 7; *Lee*, 259 S.W.3d at 792-93.  Thus, after examining all the evidence neutrally, we conclude that the evidence was not so obviously weak as to undermine confidence in the jury's determination nor was the contradictory evidence so strong that the standard of proof beyond a reasonable doubt could not have been met.  *See Robinson*, 174 S.W.3d at 331-32; *see also Watson*, 204 S.W.3d at 414-15.  Because we conclude that the evidence was legally and factually sufficient to establish that Mejia intended to deliver the cocaine, Mejia's second issue is overruled.

**D.    Deadly Weapon**

In his third issue, Mejia argues that the evidence is legally and factually insufficient to prove that he used a deadly weapon during the commission of the offense.  When a challenge is made to the legal sufficiency of a deadly weapon finding, the reviewing court must determine whether the evidence demonstrated that:  (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were put in actual danger.  *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc).

A defendant "'used . . . a deadly weapon' during the commission of the offense" if the "deadly weapon was employed or utilized in order to achieve its purpose."  *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); *Sanchez v. State*, 243 S.W.3d 57, 72 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd).  A firearm is a deadly weapon per se. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon Supp. 2009); *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).  Use of a deadly weapon not only includes the

wielding of a firearm, but also extends "to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (emphasis in original).

In *Robinson*, law enforcement officers discovered two kilograms of cocaine in a vehicle in which the defendant was a passenger. *Robinson*, 174 S.W.3d at 323. After hearing evidence that the officers discovered a loaded semi-automatic firearm under a shirt on the floorboard of the vehicle, the jury made an affirmative finding that the defendant used a firearm in the commission of the offense of possession with intent to deliver. *Id.* at 323-24. Based on evidence that the gun was loaded and located between the defendant and the driver, as well as evidence that carrying a loaded weapon was "part and parcel" of cocaine possession and delivery, the Houston Court of Appeals concluded it was "unlikely that the presence of both the handgun and the cocaine in the truck was mere coincidence" and that the evidence was legally and factually sufficient to support the jury's deadly weapon finding. *Id.* at 332-33.

In the present case, Officer Torres found two loaded semi-automatic handguns under at least one jacket on the floorboard of the backseat of the vehicle driven by Mejia. A bullet was found in the chamber of each gun and Officer Torres testified that the guns would have fired if someone pulled the trigger. Additional ammunition was also located in a clear plastic bag near the guns. We must address, therefore, whether the firearms facilitated Mejia's possession and intended delivery of the cocaine. *See Patterson*, 769 S.W.2d at 941; *Robinson*, 174 S.W.3d at 332.

The firearms were loaded and situated between Mejia, who sat in the front seat of the vehicle, and the cocaine, located inside a makeup bag that sat on the backseat. The

15

jury heard testimony that: (1) the 4.18 or 4.19 grams of cocaine constituted more than a single dosage unit; (2) a digital scale with traces of cocaine was found in Mejia's pocket; (3) small "plastic baggies" that could be used to package $20 or $40 amounts of cocaine for individual sale were found in Mejia's pocket; and (4) a bottle of Mannitol was found in the vehicle. Based on this evidence, a rational fact finder could have found beyond a reasonable doubt that the firearms facilitated Mejia's possession and intended delivery of the cocaine. *See Robinson*, 174 S.W.3d at 332-33.

Moreover, the only contradictory evidence that was presented to the jury was Vasquez's testimony that she owned the guns and that Mejia was not aware that the guns were in the vehicle. However, the jury was free to discredit this evidence and infer from the evidence presented that the guns were present in the vehicle to protect the cocaine. *See id.* Thus, after neutrally examining all the evidence, we conclude that the evidence was factually sufficient to support the jury's deadly weapon finding. *See id.* Having concluded that the evidence was legally and factually sufficient to support the jury's deadly weapon finding, we overrule Mejia's third issue.

### III. CONSTITUTIONALITY OF SENTENCE

By his fourth issue, Mejia argues that his sentence of life imprisonment was disproportionate to the seriousness of the offense and in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

### A. Applicable Law and Standard of Review

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. The Eighth Amendment is applicable to punishments imposed by state courts through

the Fourteenth Amendment's Due Process Clause. *See* U.S. CONST. amend. XIV, *Robinson v. California*, 370 U.S. 660, 667 (1962). The Eighth Amendment does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11 (2003). Although the precise contours of the "grossly disproportionate" standard are unclear, it applies only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.–Corpus Christi 2005, pet. ref'd); *see also Escochea v. State*, 139 S.W.3d 67, 80 (Tex. App.–Corpus Christi 2004, no pet.).

Although Mejia's sentence falls within the applicable range of punishment, that does not end our inquiry. Texas courts recognize that a prohibition against grossly disproportionate sentences survives under the federal constitution apart from any consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.–Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.–Texarkana 2006, no pet.).

We have recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991)." *Trevino*, 174 S.W.3d at 928 (citing *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir.1992)); *see Solem v. Helm*, 463 U.S. 277, 292 (1983); *Sullivan v. State*, 975 S.W.2d 755, 757-58 (Tex. App.–Corpus Christi 1998, no pet.)

17

(discussing the implications of the *Harmelin* opinion and reviewing the proportionality of appellant's sentence under the *Solem* and *McGruder* tests). Assuming, arguendo, the viability of a proportionality review, as we did in *Sullivan*, we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757-58. In both *Solem* and *McGruder*, we look first at the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290-91; *McGruder*, 954 F.2d at 316.

## B.    Analysis

### 1. Gravity of the Offense

As previously discussed, the evidence at trial was sufficient to prove that Mejia knowingly possessed four grams or more but less than 200 grams of cocaine with the intent to deliver. Further, the evidence was sufficient to support the jury's deadly weapon finding. With respect to the deadly weapon finding, the evidence showed that two semi-automatic firearms were located within Mejia's reach. Both guns were loaded and the barrel of each gun held a bullet. Testimony revealed that the guns would have fired as soon as the trigger was pulled.

Moreover, when conducting an Eighth Amendment proportionality analysis, we may consider the sentence imposed in light of the accused's prior offenses. *Winchester*, 246 S.W.3d at 390; *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.–Houston [1st Dist .] 2002, pet. ref'd). During the punishment phase, the State presented evidence that Mejia had a prior felony conviction for aggravated robbery that included an affirmative finding of a deadly weapon. Mejia also stated that he had committed two additional violent offenses.

Based on the evidence above evidence, the gravity of the offense indicates that the punishment was not excessive.

18

## 2. Harshness of the Penalty

The punishment range for a first-degree felony is imprisonment for life or for any term not more than 99 years or less than five years. TEX. PENAL CODE ANN. §12.32 (Vernon Supp. 2009). Thus, the Legislature considers unlawful possession of cocaine weighing four grams or more but less than 200 grams with the intent to deliver serious enough to deserve a life sentence. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). In light of the seriousness of the present crime for which Mejia has been convicted, as well as the evidence presented at the punishment hearing including, inter alia, his prior felony offense, his admission to committing two other violent offenses, and the jury's deadly weapon finding, we cannot say that his life sentence is excessive. We therefore conclude that his punishment is not grossly disproportionate to the offense for which he was convicted.

Moreover, because there is no evidence in the appellate record of the sentences imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we cannot perform a comparative evaluation using the remaining *Solem* factors. *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757-58. Therefore, we conclude that Mejia's sentence is neither grossly disproportionate nor cruel and unusual. Accordingly, Mejia's fourth issue is overruled.

## IV. CONCLUSION

Having overruled all of Mejia's issues on appeal, we affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
25th day of March, 2010.

19